IN THE UNITED STATES DISTRICT COURT
FOR THE _____SOUTHERN_____ DISTRICT OF TEXAS
_____HOUSTON_____ DIVISION

Form To Be Used By A Prisoner in Filing a Complaint
Under the Civil Rights Act, 42 U.S.C. § 1983

WILLIE ATKINS #1441701
Plaintiff's name and ID Number

WALLACE PACK UNIT - 2400 WALLACE PACK RD.
NAVASOTA, TX 77868
Place of Confinement

CASE NO: _____
(Clerk will assign the number)

v.

FRANK E. SZYMCZAK
2400 WALLACE PACK RD.
Defendant's name and address

DAVID M. RICE
2400 WALLACE PACK RD.
Defendant's name and address

LINDA J. DOUGLAS
2400 WALLACE PACK RD.
Defendant's name and address
(DO NOT USE "ET AL.")

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

JUN 2 9 2012

David J. Bradley, Clerk of Court

## INSTRUCTIONS - READ CAREFULLY

**NOTICE:**

**Your complaint is subject to dismissal unless it conforms to these instructions and this form.**

1. To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2. Your complaint must be legibly handwritten in ink, or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACK SIDE OF ANY PAGE**. ATTACH AN ADDITIONAL BLANK PAGE AND WRITE ON IT.

3. You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4. When these forms are completed, mail the original and one copy to the Clerk of the United States Court for the appropriate District of Texas in the Division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. The list labeled as "VENUE LIST" is posted in your unit law library. It is a list of Texas prison units indicating the appropriate District Court, the Division and an address of the Divisional Clerks.

## II. PLACE OF PRESENT CONFINEMENT: TEXAS DEPARTMENT OF CRIMINAL JUSTICE- WALLACE PACK UNIT

## III. EXHAUSTION OF GRIEVANCE PROCEDURES:

Have you exhausted both steps of the grievance procedure in this institution? XX   YES   ___ NO

Attach a copy of the Step 2 grievance with the response supplied by the prison system.

## IV. PARTIES TO THE SUIT:

A. Name of address of plaintiff: WILLIE ATKINS, #1441701 - PACK UNIT - 2400 WALLACE PACK RD.
NAVASOTA, TX  77868

B. Full name of each defendant, his official position, his place of employment, and his full <u>mailing</u> address.

Defendant #1:  FRANK E. SZYMCZAK, LIEUTENANT - WALLACE PACK UNIT.
WALLACE PACK UNIT - 2400 WALLACE PACK RD. - NAVASOTA, TX  77868.

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
FAILED TO PROVIDE ADEQUATE/APPROIATE SECURITY AFTER REPEATED REQUESTS.  RESULTED IN INJURIES.

Defendant #2:  DAVID M. RICE, MAJOR OF CORRECTION OFFICERS - WALLACE PACK UNIT.
Wallace Pack Unit - 2400 Wallace Pack Rd. - Navasota, TX  77868.

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
Failed to provide adequate/approiate security after repeated requests.  Resulted in injuries

Defendant #3:  LINDA J. DOUGLAS, CORRECTION OFFICER-V  - WALLACE PACK UNIT.
WALLACE PACK UNIT - 2400 WALLACE PACK RD. - NAVASOTA, TX  77868.

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you. Resulted in unnecessary -
Forced me to work while medically unassigned from injuries received 7-2-10. pain, suffering, MALICE.

Defendant #4:  SAMMY L. HUBBARD, CORRECTION OFFICER-V  - WALLACE PACK UNIT.
WALLACE PACK UNIT - 2400 WALLACE PACK RD. - NAVASOTA, TX  77868.

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.  injuries.
Failed to provide appropriate security after threats in his presence.  Resulted in property damage,

Defendant #5:  ELTON S, SIMS, LIEUTENANT OF CORRECTION OFFICERS - WALLACE PACK UNIT.
WALLACE PACK  UNIT - 2400 WALLACE PACK RD. - NAVASOTA, TX  77868.

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
Failed to provide adequate/approiate security after repeated requests.  Resulted in injuries.

Defendant#6:    ANNA A. SANCHEZ, SERGENT OF CORRECTION OFFICERS - WALLACE PACK UNIT.
WALLACE PACK UNIT - 2400 WALLACE PACK RD. - NAVASOTA, TX  77868.
Failed to provide adequate/approiate security after repeated requests.  Resulted in injuries.

Defendant#7:    FELIPE PERALTA, JR., CORRECTION OFFICER-V, / SERGENT OF CORRECTION OFFICERS - PACK UNIT.
WALLACE PACK UNIT - 2400 WALLACE PACK RD. - NAVASOTA, TX  77868.

Failed to provide adequate approiate security after repeated requests.  Resulted in injuries.

**PLEASE SEE ATTATCHED IV. PARTIES TO THE SUIT:**

IV. **PARTIES TO THE SUIT:** (Continued from Page 3 of 5):

**Defendant#8:**  MELLISSA A. WILSON, SERGENT OF CORRECTION OFFICERS - WALLACE PACK UNIT.
WALLACE PACK UNIT - 2400 WALLACE PACK RD. - NAVASOTA, TX  77868.

Failed to provide adequate/appropriate security after assault in her presence and orders to pack. Resulted in disciplinary case and injuries.

**Defendant#9:**  CAREY S. STAPLES, ASSISTANT WARDEN - WALLACE PACK UNIT.
WALLACE PACK UNIT - 2400 WALLACE PACK RD. - NAVASOTA, TX  77868.

Failed to provide adequate security after I made request.  Failed to moniter unit security compliance. Resulted in injuries.

**Defendant#10:**

**Defendant#11:**

**V. STATEMENT OF CLAIM:**

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved. Describe how each defendant is involved. You need not give any legal argument or cite any cases of statutes. If you intent to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember that the complaint must be stated briefly and concisely. IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.

(1) **QUESTION BEFORE THE COURT:** If you were a prison guard or official and I came to you and told you an offender has destroyed my personal property by cutting the cord to my radio, smashing my alarm clock and head phones, as well as cutting up my tennis shoes with a razor. Would you keep us on the same dorm, or would you seperate us immediatly and investigate further?

(2) Pack Unit Officials failed and routinely refuse to follow Administrative Directive concerning Safe-Prison, threats of violence and seperate potential victims from perpertrators. During the two-months complained, myself, my mother and other offenders wrote letters and begged in person repeatedly to be moved or seperated from offender(John?) Miller. I was severly injured as a result. Their failure to act was **Deliberately Indifferent** with **MALICIOUS INTENT.**

**PLEASE SEE ATTACHED STATEMENT OF CLAIM (Continued):**

**VI. RELIEF:** State briefly exactly what you want the court to do for you. Make no legal arguments. Cite not cases or statutes.

**PLEASE SEE ATTATCHED PRAYER FOR RELIEF (Continued):**
(A) Declare that the acts and omissions described herein violated Plaintiff's "**Clearly Established**" Constitutional Rights and laws of the United States; (B) Order Defendants pay compensatory, punitive –

**VII. GENERAL BACKGROUND INFORMATION:**

A. State, in complete form, all names you have ever used or been known by including any and all aliases:

(1) WILLIE JAMES ATKINS, JR; (2) WILLIAM ATKINS, JR; (3) WILLIE ATKINS

B. List all TDCJ-ID identification numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you, if know to you.

(1) 497284;  (2) 610406-? ;  (3) 1441701.

**VIII. SANCTIONS:**

A. Have you been sanctioned by any court as a result of any lawsuit you have filed? ____ YES  xx  NO

B. If your answer is "yes", give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

1. Court that imposed sanctions (If federal, give district and division): N.A.
2. Case Number: N.A.
3. Approximate date sanctions were imposed: N.A.

N.A. 4. Have the sanctions been lifted or otherwise satisfied? _____ YES _____ NO   N.A.

V.  STATEMENT OF CLAIM:  (Continued from Page 4 of 5):  (1 of  )

(3)     **SPECIFICALLY:**  On or about Friday, July 2, 2010, at approximately 12:00 noon, located at dorm C-9, bunk 46, I was ambushed and physically assaulted by Offender (John-?) Miller, (TDCJ-ID number unknown) "aka - Detroit". Early 30's - (b/m) - 240 pounds - 6'2" tall - weight lifter, I was immediately rushed by van and ambulance to two seperate hospitals as a result of the injuries I received.

(4)     This is the same Offender Miller "aka-Detroit" previously complained of repeatedly to Pack Unit Officials concerning threats,m acts of violence and property damage/destruction

(5)     **BEGINNING:**  On Saturday evening, May 1, 2010, at approximately 19:00, located at C-9 dorm - back dayroom. Defendant Hubbard failed to act, remove, seperate, or issue a disciplinary case to Offender Miller when Miller became out of control and made threats of violence and physical assault towards myself, Offender R. Lee Toomy (w/m-60+); Offender Davis (b/m-60+); Offender Lane (b/m-60+), while under Defendant Hubbard's "DIRECT SUPERVISION" within "SIGHT and SOUND", as well as for unplugging the television after loosing vote concerning channel selection. We begged to move Miller.

(6)     Offender Miller scream in Defendant Hubbard's presence that Hubbard told him I **"SNITCHED HIM OUT"** for unplugging the t.v. A claim defendant Hubbard did not deny.

(7)     On or about Sunday morning May 2, 2010, at approximately 03:00, I went to work-kitchen; 06:00 showerd with kitchen workers; 06:20 exit showers while C-9 dorm enters;

(8)     At approximately **06:30**, while located at C-9 dorm entrance bars, I observed offender Escabedo located in bunk (C-9-53) awake as look out while the dorm was empty during shower time. I observed offender Miller quickly leave the area of my cubicle (C-9-46), jump into bed (C-9-11) and pretend to be asleep. I immediately discovered the wire to my radio was cut, my head-phones smashed and my alarm clock destroyed. I later discovered tennis shoes and fan cord were also cut.

V. STATEMENT OF CLAIM: (Continued from Page 4 of 5): (2 of  )

(9)     5-2-10, approximately 06:30, I immediately took destroyed property to Defendant Lt. Sims office. He said he would move offender Miller the next day. He failed to seperate me from Miller, question Miller, or take witness statements. I was threatened again later that day by Miller;

(10)    On Monday morning, 5-3-10, between the hours of 03:00 - 06:00, while I was away at work, brewed coffee was poured into my cublicle, covering my bedding and mattress;

(11)    On Monday morning, 5-3-10, at approximately 06:30, located at door to U.C.C. hallway, I immediately talked to Defendant Sergent Sanchez, Safe-Prison Supervisor. I informed of of prior events leading up to the coffee. I asked if she would contact Defendant Lt. Sims to remind him of his promise to seperate me from offender Miller (C-9-11). She stated she would.      She never called me out, seperate me from Miller, call Miller out to investigate, or take witness statements eventhough she is **SAFE-PRISON SUPERVISOR.**

(12)    On or about May 3, 2010, Monday morning, I wrote two letters. I truck mailed Defendant Major Rice a copy and hand delivered the second copy to officer E. Maxey at the serchers desk for Defendant Lt. Sims. Later that day (lunch time), I spoke to Defendant Sims concerning the letter and being moved or seperated from Miller. The letter was on his desk. Defendant Sim replied that he would give said letter to Defendant Sgt. Sanchez. I was never seperated.

(13)    On or about a few days past May 3, 2010, I saw Defendant Major Rice in the hallway at the infirmary door. I asked if I could please talk to him concerning the letter I wrote and the problem I was having. He refused. He did not deny knowledge or receiving said letter.

(14)    On or about a few days past May 3, 2010, I saw Defendant Major Rice in the Lieutenant's office with Defendant Lt. Szymczak and asked to please speak. He refused a second time.

(15)    On or about Tuesday, May 4, 2010, located at dorm C-9, during lunch time, Defendant Peralta, Extortion, Safe-Prison Officer was there to search cells (C-9-15) and (C-9-47). I attempted to give him a copy of said letter in paragraph 12, in the presence of officer Hightower while the dorm was away at lunch. He refused to accept it and said to mail it. I informed him that Defendant Sgt. Sanchez already had a copy.

(16)    On or about Tuesday, May 4, 2010, located at dorm C-9 entrance door, upon return from lunch in paragraph 15, Officer Hightower told offender Miller about the details concerning attempt to give letter to Defendant Peralta in paragraph 15.

(17)    On or about May 6, 2010, six-offenders from dorm C-9 wrote seperate letters to safe-prison concerning offenders Miller and Escabedo, placed in a single envelope, mailed via Truck-Mail. No reply.

(18)    After days turned to weeks with no relief or help from officials, I saw Warden Staples in the hallway and asked for his help. I did not know Offender Miller's true name at the time. I gave Warden Staples his housing location. I explained the problem and the contacts with officials. He said he would see me later after he finished a meeting. He never replied.

(19)    Throughout the month of May - 2010, I continued to seek help. I had to lock up all property (radio, hot-pot, fan, etc.) whenever the dorm emptied. Offender Miller continued to bully, threaten and extort this **nursing home-type dorm**, with no fear of disciplinary actions by Pack Unit Officials. (For example: Sunday, May 16, 2010, located at back dayroom, offender

V.  STATEMENT OF CLAIM: (Continued from Page 4 of 5):   (3 of  )

(19) Davis, paragraph 5, and others watch t.v. program at back dayroom. Offender Miller, located at front dayroom, table #2, playing dominoes, stops playing dominoes, gets the remote changes the channel on the back t.v. interupting the program in progress. He did the same for the front dayroom t.v. Gave back the remote and returned to playing dominoes). All without approval, request, or vote.

(20) On or about June 2, 2010, located at the searchers desk, Defendant's Peralta and Sims. I asked if he would please help with the offender in bunk C-9-11, (Miller). Defendant Peralta stated that I had no proof that offender Miller destroyed my property or caused any harm. H asked him to call out witnesses and take statements from offenders listed on the letters I sent, paragraph 12. He wrote them down and said he would. He never did.

(21) On or about Tuesday morning, June 22, 2010, I was called to searchers desk for classification lay-in. Defendant Lt. Szymczak called me into his office and told me my mother called him and that she was worried about me because of the information complained. Defendant Szymczak asked why had I not reported the incidents. I told him I had. When I attempted to give him details he told me to shut-up because I talk too much. He instructed me to go to classification and he would take care of the problem. He never did.

(22) On or about Tuesday, June 22, 2010 (lunch-time), I saw offender R. Lee Toony - in the hallway. Offender Toony witnessed the history with offender Miller and Escabedo while housed at dorm C-9-15, paragraph 5. Offender Toony was one of the six offenders who wrote safe-prison in paragraph 13. He attempted to verify complaint to Defendant Szymczak in paragraph 21, but Defendant Szymczak refused to talk.

(23) ON OR ABOUT FRIDAY, JULY 2, 2010, at approximately 11:00 am, located at C-9-dorm, Defendant Sgt. Wilson failed to provide me with adequate/appropriate security well established by TDCJ Rules, Policy and Guideline. On the above date & time, Defendant Sgt Wilson was running commissary from C-9-dorm. I was seated at table #1 closet to the exit door. Offender Davis was seated at table #2. Defendant Sgt. Wilson opened door to let one person out for commissary from table #1. I moved to the seat vacated. Offender Davis attempted to push me by force from said seat. When I held the seat tightly to resist, Offender Davis grabbed me from behind in a full-nelson head lock, raised me from said seat and pushed me to the floor. Defendant Sgt. Wilson stood there in "DIRECT SUPERVISION" within range of "SIGHT and SOUND". The entire time I'm asking her if she was going to allow him to do this to me. Defendant Sgt Wilson laughed out loud and took no actions against defendant Davis.

(24) ON OR ABOUT FRIDAY, JULY 2, 2010, in an attempt to prevent further assault, offender Lane traded places with me in line and allowed me to leave the dorm immediately for commissary. Upon my return offender Davis continued with verbal abuse and intimidation within "SIGHT AND SOUND" of Defendant Sgt. Wilson, because Davis said I skipped in line. FALSE! Offender Davis then kicked me. I defended myself and received my first disciplinary case ever, from Defendant Sgt. Wilson.

(25) ON OR ABOUT FRIDAY, JULY 2, 2010, at approximately 12:00 noon, Defendant Sgt. Wilson handcuffed and escorted offender Davis and myself to Defendant Lt. Szymczak's office. I was told to pack-up and move. I then returned to C-9-dorm unescorted to pack personal property.

(26) ON OR ABOUT FRIDAY, JULY 2, 2010, AT APPROXIMATELY 12:15 noon, located at bunk C-9-46, I was packing my property, head down in locker, when out of no where without warning offender Miller came to said bunk and gave me a full forced, 240 pound, closed, unexpected fist to my eye and nose. The same eye that I have had two previous surgeries, as well as facial-cranial reconstruction with metal hardware implanted. Blood went every where.

V. **STATEMENT OF CLAIM: (Continued): (4 of )**

(26)    I had to jump over the cublicle wall to escape, where blood then landed in bunk C-9-47.

(27)    Shortly after the assault, the officer assigned to C-9-dorm (name unknown), came to tell me to hurry packing before count and observed me bleeding from face with extremely large amounts of blood on myself and surroundings. Said officer asked me what happened? I told him offender in bunk 9-11 assaulted me. Offender Miller denied the assault. I was escorted to infirmary. Witnesses statements were taken. Offender Miller was finally locked-up. I assumed he would be shipped.

(28)    **ON OR ABOUT JULY 2, 2010**, at approximately 15:00, transported by van to Bryan St.-Joseph Hospital E.R. by Officers Thompson and Martell, due to injuries received.

(29)    **ON OR ABOUT JULY 2, 2010**, at approximately 20:30, Officers Mr. Bossier and Jones transported by ambulance to Scott & White Hospital, Temple, Texas, due to injuries received. Stayed over nite.

(30)    **ON OR ABOUT JULY 3, 2010**, Saturday morning, released from Scott & White Hospital. Transported by van back to Pack Unit by Officers Richardson, Bossier, Jones. (24 hours no food).

(31)    Upon arrival at Pack Unit, Defendant Sims attempted to house me in dorm D-13-27, with gang members affiliated with offender Miller. Also three offenders with documented serious altercations in the past. I immediately informed Defendant Lt. Sims of the offenders involved (offender Bratton detatched retina; offender Swift assault; offender Brown "aka-Duke", gang leader). Defendant Sims forced me to move in regardless of past altercations.

(32)    On or about July 3, 2010, upon entering the dorm, I was greeted with hostility. the locker in the assigned cublicle had been destroyed. Only after the **"TANK BOSS"** offender Brown "aka-Duke" told Defendant Lt. Sims that I was not allowed on dorm 13 was I moved to another dorm, A-4-8. Wheel chair dorm. Peaceful, safe, no threats, no hostility.

(33)    On or about July 4, 5, 6, 2010, no pain medication. Finally received on or about July 7, 2010.

(34)    On or about July 6, 2010, Defendant Lt. Sims changed my housing assignment from A-4-8, to B-8-29. Peaceful, safe, no threats, no hostility.

(35)    On or about Thursday nite into Friday morning, July 8 & 9, 2010, between the hours of 01:00am to 07:00am, overnite emergency infirmary visit. Pain severe, both eyes, nose, head. dizzy, blurred vision. Diagnosed broken nose and concussion. Doctor ordered medication and medically unassigned work status to heal.

(36)    On or about July 9, 2010, Medical release to return to dorm. Not to work.

(37)    **On or about Friday morning, July 9, 2010**, at approximately 7am to 8am, after leaving infirmary, located at the searchers desk, **I was forced by Defendant Douglas to work** or face disciplinary charges, even after explaining my injuries.

(38)    Defendant Douglas called infirmary. Ms Vatani, PA., verified medically unassigned status. Classification verified medically unassigned status. I was forced to work regardless. Officer Mrs Johnson (First name unknown) was present and sympethetic, but not incharge.

(39)    I walked a solid three-hours with a push broom from the gym to D-hallway, the entire length of the building. Back and forth, over and over. This was well over my medical limitation of 100-yards.

V. STATEMENT OF CLAIM: (Continued from Page 4 of 5): (5 of  )

(39)     I was also forced to bend, lifting and washing trash cans, cleaning cell bars, both low and high. This is also against medical restrictions of no bending at the waist.

(40) These actions from Defendant Douglas, paragraph 38, 39 were deliberate with malicious intent to cause pain and suffering. At approximately 09:30 am count-time, Defendant Douglas excused all hall janitors from duty until after lunch, except myself. Defendant Douglas ordered me to report back to duty immediately after count or face disciplinary. As a result, I worked during building chow. All other janitors were off duty. Officer Martell directed chow.

(41)     As a result of these actions, I suffered severe pain, extreme dizziness that made my condition worse. I suffered unnecessary pain from swollen knee, inflamed, swollen hemorrhoids. Injuries required medication.

(42)     Malicious intent because Defendant Douglas's indifference toward me and disregard of my current medical needs and restriction continue todate, June - 2012, two years later.

(43)     If the situation with offender Miller, paragraphs 5 thru 25, been handled according to "Clearly Established" TDCJ Policy, Procedures, and Administrative Directives, I would not have suffered " SERIOUS INJURIES REQUIRING TREATMENT BEYOND FIRST AID ". However, these procedural violations continued.

(44)     On or about Friday, July 23, 2010, I left Pack Unit for medical appointment Galveston, scheduled for Monday, July 26, 2010, eye clinic.

(45)     On or about Tuesday, July 27, 2010, I returned to Pack Unit. Assigned housing at D-15-30. Peaceful, safe, no threats, no hostility.

(46)     On or about Wednesday, July 28, 2010, at approximately 03:00, located in hallway at infirmary door. I was surprised by offender Miller out of lock-up, still on Pack Unit, enroute to his same job in laundry. No disciplinary job change. He bumped me from behind and made a verbal threat. Offender Bobby Ray (last name unknown) held Miller back.

(47)     On or about Friday, August 6, 2010. Defendant Lt Sims called me to his office to inform my mother called concerning security complaints against Miller. Capt. Parrot present orderd me to lock-up Offender Protection Investigation.

(48)     Per TDCJ Policy, officer Gamble escorted me to dorm D-15-30 to pack. She then escorted me to Ad-Seg 17.

(49)     On or about Monday, August 9, 2010, U.C.C. Asst. Warden Staples, Defendant Major - Rice, Ms Suarez denied Offender Protection. Back to population D-15-22. Peaceful, no threats, no hostility.

(50)     On or about Wednesday, August 11, 2010, Defendant Major Rice called me to his office concerning my mother calling Huntsville to report security concerns. He asked what did he need to do for me to call "yo momma" and tell her you feel safe. I requested a legal box to prevent damage and vandelism to my legal transcript and pleadings. He also promised to keep me assigned to 15-dorm.

(51)     On or about Thursday, 8-12-10, Jane M. Cockerham, TDCJ-CID Office Of Ombudsman wrote my mother to confirm letter No: 10-5640-01, concerning safety and housing.

(52)     On or about 9-28-10, return to Pack Unit from Galveston medical appointment. Housing assignment changed to 13-dorm in paragraph 32. I reminded Defendant Lt. Szymczak of

**V. STATEMENT OF CLAIM:** (Continued from Page 4 of 5):   (6 of   )

(52)   security threats on 13 dorm in paragraph 32, and the promise Defendant Major Rice made to myself, my mom, and ombudsman to remain housed on 15-dorm. Defendant Szymczak: Q. "What you trying to get back to on 15-dorm so bad?"; A. "I don't get beat up on 15-dorm. Safety, no threats, no hostility, no property damage". Defendant Szymczak stated he would move me to 16-dorm, but not 15-dorm. I reminded him offender Escabedo (previously C-9-53), paragraph 8, was currently housed at 16-dorm. Defendant Szymczak said he would move Escabedo to 13-21 dorm, and move me to dorm 16, bunk 37, but not to 15 dorm. I said that was fine because I had no threats on 16-dorm.

(53)   On or about 9-28-10, Defendant wrote me Disciplinary Case No: 2011-003-0091, for "refusing to move into 13-21...because several offenders housed in 13-dorm have given him "<u>PROBLEMS</u>" in the past ".

(54)   On or about 9-30-10, I was called to disciplinary court. Capt. Parrot, Mrs. Cantu - Substitute Counsel, called Major Rice by phone. He denied promise at paragraph 50, 51, for me to remained housed on 15 dorm.

(55)   On the above date, during same disciplinary hearing, attempts to contact Defendant Szymczak were unsuccessful. As a result, proceedings halted until Monday, 10-4-10.

(56)   On or about Monday, 10-4-10, scheduled for off-unit medical appointment in Galveston. Disciplinary Court proceedings delayed as a result.

(57)   On or about Monday, 10-18-10, returned to Pack Unit from Galveston medical appointment. Housed at D-16-42. No safety concerns on 16-dorm.

(58)   On or about Tuesday, 10-19-10, called to disciplinary court to continue disciplinary hearing in paragraphs 53 - 55. Capt Parrott attempted to call Defendant Szymczak by phone. Said Defendant was not available. It was later revealed **Defendant Szymczak was arrested on assault charges toward his wife/girl-friend.**

(59)   As a result of the ASSAULT CHARGES against DEFENDANT SZYMCZAK in paragraph 58, the disciplinary court hearing could not proceed. Said Defendant was off unit for several months as a result, but eventually returned.

(60)   During the same time period in paragraph 58, Lt. Melcher was arrested for D.U.I. charges. Later revealed said Lt., has been arrested numerous occassions with multiple convictions. Lt. Melcher was off unit for several months as a result, but eventually returned. This information is relevant because claims of **Inadequate Security** have also been claimed against Lt. Melcher on a different occassion.

### IN CLOSING

(61)   INADEQUATE/INAPPROPRIATE SECURITY continues on the Wallace Pack Unit and are too numerous for this single complaint. HOWEVER, they do prove a history and culture risinig to the level of **DELIBERATE INDIFFERENCE with "<u>MALICIOUS INTENT</u>"**, and not a single isolated incident. Primarily against Defendant's Lt. Szymczak and Major Rice, on a "**Nursing Home Type Unit**", classified as Minimum-Security Protected.   PLEASE HELP!   THANKS.

VI. PRAYER FOR RELIEF (CONTINUED FROM PAGE 4 OF 5):

(1) COMPENSATORY DAMAGES: DEFENDANT HUBBARD — $150.00 INDIVIDUAL CAPACITY.

(2) PUNITIVE DAMAGES:

| | |
|---|---|
| DEFENDANT SZYMCZAK - INDIVIDUAL CAPACITY | $26,000.00 |
| DEFENDANT RICE - INDIVIDUAL CAPACITY | $25,000.00 |
| DEFENDANT DOUGLAS - INDIVIDUAL CAPACITY | $10,000.00 |
| DEFENDANT SIMS - INDIVIDUAL CAPACITY | $500.00 |
| DEFENDANT WILSON - INDIVIDUAL CAPACITY | $1,500.00 |
| DEFENDANT SANCHEZ - INDIVIDUAL CAPACITY | $1,500.00 |
| DEFENDANT PERALTA - INDIVIDUAL CAPACITY | $1,500.00 |
| DEFENDANT STAPLES - OFFICIAL AND INDIVIDUAL CAPACITY | $1,500.00 |
| DEFENDANT HUBBARD - INDIVIDUAL CAPACITY | $100.00 |
| DEFENDANT - PENDING | |
| DEFENDANT - PENDING | |

C. ORDERS DEFENDANTS TO PAY REASONABLE ATTORNEY FEES AND COST; AND

D. GRANT OTHER JUST AND EQUITABLE RELIEF THIS HONORABLE COURT DEEMS NECESSARY AND APPROPRIATE.

C. Has any court ever warned or notified you that sanctions could be imposed? ____ YES  XX  NO

D. If your answer is "yes", give the following information for every lawsuit in which warning was imposed. (If more than one, use another piece of paper and answer the same questions.)

1. Court that imposed warning (if federal, give the district and division): N.A.
2. Case number: N.A.
3. Approximate date warning were imposed: N.A.

Executed on: June 27, 2010
           (Date)

WILLIE AIKINS, #1441701
_____
(Printed Name)

W J AIK #1441701
_____
(Signature of Plaintiff)

**PLAINTIFF'S DECLARATIONS**

1. I declare under penalty of perjury all facts presented in this complaint and attachment thereto are true and correct.

2. I understand if I am released or transferred, it is my responsibility to keep the Court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.

3. I understand that I must exhaust all available administrative remedies prior to filing this lawsuit.

4. I understand I am prohibited from bringing an *in forma pauperis* lawsuit if I have brought three or more civil actions in a Court of the United States while incarcerated or detained in any facility, which lawsuits are dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger or serious physical injury.

5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire **$350** filing fee and costs assess by the Court, which shall be deducted in accordance with the law from the inmate account by my custodian until the filing fee is paid.

Signed this 27TH day of JUNE, 20 12.
        (Day)         (Month)          (Year)

WILLIE AIKINS, #1441701
_____
(Printed Name)

W J AIK #1441701
_____
(Signature of Plaintiff)

**WARNING:** The Plaintiff is hereby advised any false or deliberately misleading information provided in response to the following questions will result in the imposition of sanctions. The sanctions the Court may impose include, but are not limbed to monetary sanctions and/or the dismissal of this action with prejudice.